Good morning. First case for argument is Courthouse News Services v. Dorothy Brown, No. 18-1230. Mr. Castiglione. Your Honors, good morning. May it please the Court, I am Paul Castiglione on behalf of electronic filing in the Circuit Court of Cook County. All documents have to be filed there, including complaints. Now, when a complaint is filed electronically, it goes into a queue, and that filing has to be accepted by the circuit clerk before a clerk can even have access to it. But before the circuit clerk can accept the filing, the clerk has to ensure she complies with both the rules of the Illinois Supreme Court and the order from the chief judge of the Circuit Court of Cook County, Order 2014-02, which requires her to go through and make sure that certain prohibited documents, mainly pertaining to private or confidential information, social security numbers and the like, are not attached to the complaint. But this is not a policy that the circuit clerk herself devised. This is a policy that was created by the Illinois Supreme Court and by Chief Judge Evers. In fact, that is the mandate of the Supreme Court and the chief judge. And the clerk is the highest non-judicial number of the judiciary in Illinois. What do you mean by mandate? Well, directive, maybe, is a better word, Your Honor. The directive is, there's certain prohibited documents that shouldn't be there, so a security number, a driver's license number. And before – and there are others. I think there's – in judge court, there's a number of other things that should be there. It's interesting that you picked the social security number example. So the – I know where that's at in 2014-02, but you also have that Illinois Supreme Court rule, do you not, 15, that makes clear just by its expressed terms that it's not the responsibility of the clerk, you know, to check that social security numbers are not present in filings. The circuit – the district court focused on that as well, Your Honor, in deciding to grant a preliminary injunction. I think that was an error, and here's why. That's disclaimer language. I think that's the Supreme Court saying, filer, the burden is on you, the responsibility is on you to make sure that information doesn't belong here, isn't included in the complaint. And if it somehow sneaks through, it's not on the court system, it's not on the clerk, it's on you. But at the same time, in paragraph 11 of that same order, the Supreme Court says that confidential documents should not be included. And I think in going – yeah, I think those two rules have to be viewed together, Your Honor, the Supreme Court rule and Chief Judge Evans' order. Were you checking the paper – or was the clerk checking the paper filings for social security numbers? I believe so. Just – Yeah, I think this has been – I think this is something that's always been in place. I think the thing – the thing was, there would be someone there when a complaint was filed who could just look and make sure the fees were filed and everything was as it should be before accepting it. The problem is now, much like this court, it's a 24-7 system. People can file anything at any time of night. And because the clerk's office isn't open 24-7, there has to be some time the next business day where it can be some review – some meaningful review made to make sure that the document, in this case a complaint, was filed properly. Mr. Castiglione, what evidence is there in this record that private e-filers have actually been making mistakes that clerk's staff have been correcting? That was not explored, and there is nothing in the record, Your Honors, to that. I mean, the – That's your whole foundation, isn't it? No, I think the foundation is that we feel younger abstention applies because the chief judge – Okay, we'll talk – we'll talk about abstention. Okay. But in terms of the merits – Right. I thought the most compelling reason you have for doing this review is ensuring compliance with privacy and confidentiality requirements, which are serious and important. But I don't see evidence in our record indicating that the clerk's staff is actually using the opportunity for that purpose. Well, that was just – it was not an issue that was brought up by the plaintiff who was in the movement. We didn't bring it up because we – the parties agreed that complaints were being filed and they were being processed, by and large, over 90 percent within one business day, over 96 percent within two or three business days. It just wasn't an issue that was in dispute in the district court, that the need for checking for privacy or the fact that there had been – not that there have been instances, Your Honor, where filings are rejected all the time. Just as filings in this court are rejected for not complying with the rules. But we don't have that in our record. It's not in the record. That's correct. It was not in dispute. The plaintiffs did not dispute that there's a need – they did – the plaintiff's position is not that there's – they don't dispute that there's a need to check for private information. Their dispute was – to go back to Judge Scudder's question, and I hope I pronounced that right, that the burden's on the filer and that the circuit clerk doesn't really have a role in it. And the problem with that position is that there's no – a rule can't be meaningful if a court can't have some way to enforce it. In this case, the only way the circuit court can enforce this rule is to have the clerk do the screening at the beginning. Otherwise, it's a meaningless rule, and documents can be filed with Social Security numbers, with information that's not there, in contravention to both – to Judge Evans' order and in contravention to the Supreme Court rule. What's odd to me about this is that when I looked at the briefs and I looked at the documents, the only thing that I thought that you all would be saying is we're completely committed on the access, on the First Amendment access to the media. We just have a resource issue on our hands. Well, that is our position, Your Honor. We don't – we don't dispute that there's a First Amendment right to be able to review documents. The question is can a circuit clerk, just like the clerk in the Seventh Circuit, be able to do a necessary review that causes a temporary delay? The world was fine when you were putting the papers on the counter, right? Right. And now all of a sudden we go to an e-filing world that's supposed to be more efficient and preserve resources on the whole, and it's gotten worse with respect to – It hasn't gotten worse for filers, Your Honor. And I would – No, no, no. On the access point, right? Well – In the paper world, we didn't have a lawsuit. No, that's true. But the problem there was if you were a litigant, you could only file between Monday and Friday, 8.30 to 4.30 p.m. Now people can file in another country if they have a laptop, you know, at 3 in the morning if necessary. And I think there is a game to litigants and to the parties in the state court cases being able to – being able to file at any time. The problem is the circuit clerk's office isn't open 24-7, and there has to be some tradeoff. And I think it's a reasonable tradeoff, and I don't think the First Amendment – it's a tradeoff that violates the First Amendment. You read Judge Kennelly's order to basically require if a complaint is filed at 11 p.m. tonight, Friday, that there needs to be access what, yet today, tomorrow? Immediately. I read his opinion to say it has to be immediate and contemporaneous access. The minute it's filed, everybody can see it. I thought everybody agreed, though, that it was all right to limit the access to computer terminals in the clerk's office. But that's true. We did agree to that, but those terminals are only available 8.30 to 4.30 Monday through Friday. So to go back to your example, if someone filed it Saturday night at 10 o'clock, there's no access to those – I didn't think your – I think that's what Judge Hamilton is saying. I didn't think your adversary had an issue with that. They weren't saying you have to open the courthouse on Saturday or Sunday. No, but the point is that – okay, so there's no access to the terminal on Saturday or Sunday, but there's no circuit clerk – deputy clerk to review the filing to make sure it was done properly either. And all we're saying is the next business day, that needs to be done before the document can be accepted as filed. In this respect, we believe this case is similar to a case from this Court, SKS, where there was a challenge to another circuit court general order dealing in that case with the eviction procedures. And we feel that you have the O'Shea v. Littleton, where a challenge was made, a federal challenge was made to the way a judge rules in a criminal court in, I believe, Missouri, and you had SDS where – Oh, in southern Illinois. Oh, southern Illinois. Came out of the circuit. And it was close by. But in any event, in both cases, both O'Shea and SKS, both the Supreme Court and this Court held there would be an improper interference with the management of the court system. This is no different. Could we abstain or order abstention in this case without creating a circuit split with the Ninth Circuit's decision in Courthouse News Services v. Planet, I believe it is? I think if there's a – no, I don't think so, Your Honor. Well, no more of it already exists. I think SKS and Planet may not line up exactly. In Planet, the Court held that the management of the docket was different than the operation of the court in – Look, the Ninth Circuit and other courts that have looked at this abstention problem have said it's not an all-or-nothing proposition in dealing with state courts, that you need to look at the kind of issue, the kind of federal order that might be in place. Why would abstention be appropriate here? I think because this – the general order from Judge Evans here is more analogous to the general order from Judge Wright and SKS than it was to the situation in – or to, you know, more analogous to that than what the Court was focusing on in Planet, which was not a general order but just a practice, a practice regarding the processing of complaints. Frankly, I think – I'm not sure Planet – I think Planet may read Younger, O'Shea, too narrowly. I think SKS is more faithful to Younger and O'Shea, and I think it's the better case, and it's the law of the circuit. So based on SKS, I think the – to challenge both the practices of the circuit clerk, which are really based on Chief Judge Evans' order and on a Supreme Court rule, I think the remedy or the proper approach for a plaintiff would have been to file a claim in state court, a First Amendment claim, which no one disputes they had the right to do. They just – it just didn't belong here. Is there any possibility, Mr. Castiglione, of a practical solution here from redaction software that some courts are using around the country? I – well, I know that Rule 138 allows for, for example, a Social Security number to appear if it's just the last four digits. So the redaction – I'm talking about automated. Oh, I see what you're saying. Okay. You know, I think if there was a way to reconfigure the filing where the prohibited documents couldn't be attached in the first place, I think that would be very helpful. I'm not aware of it. That's not on the record, and I'm not aware of it. That's even possible. Okay. I see – I want to reserve some time for rebuttal. I'll just say briefly about the First Amendment. I don't think this Court needs to reach any First Amendment issue here. I don't think it's properly before the Court. A lot of the plaintiff's brief talks about time, place, and manner restrictions. That doesn't make a lot of – that doesn't make a lot of sense to me here, given the procedural posture of the case. If this was a challenge to Chief Judge Evans' order or to the Supreme Court rule in the State court, then I think a discussion about time, place, and manner restrictions would make sense. It doesn't make a lot of sense with respect to the circuit clerk who set none of these conditions, but we're merely following the orders of the Court. So I would – I'd like to reserve the rest of my time for rebuttal. I'm going to ask the Court to reverse the preliminary injunction and to remand the case of instructions to dismiss for lack of subject matter jurisdiction. Thank you. Thank you. Both sides have agreed to split their time with friends of the Court. Mr. Nave? May it please the Court. My name is Robert Nave, and congratulations for pronouncing it right. Most people don't. And I'm appearing on behalf of Amicus Curiae Judicial Council of California. The reason that we're here as did in our brief is because the Judicial Council is responsible for administration of the judicial branch of the state of California, so we have a pretty good perspective on what the burdens are on a court system. And what I thought I would do today is try to back up a couple of steps and try to put it a little into context, sort of why we're here. The real thrust as we read it of Courthouse News' argument is that there are scatterings of cases, Grow Fresh being the primary one, usually in the sealing context, where courts say that there has to be this contemporaneous accident and it has to be now and no delays. And that's fine in the context of a sealing case, which involves one issue in one case with one or two or three parties and a judge. This case is entirely different when you start asking about what does the court itself do, because the court has more than one constituent. Courts exist to provide access to the judicial system and to fair justice. That means that the court isn't necessarily looking at just what's happening in a single case. The court has to think about things like staffing, things like what rules are already out there, for example, in California we have lots of rules that talk about privacy and that kind of thing, thinking about the litigants' rights, thinking about what happens in a court system where the resources are limited. If you direct a court to do something and spend more money in one area, that necessarily means that something's going to get taken from someplace else. And so my first and overarching comment to the court or suggestion to the court is that when you're asking about access, these cases are different from really anything else you've decided, because they affect the system. Another way of looking at it is to say that the sealing cases are sort of like as-applied challenges, as opposed to this kind of case, which talks about things on a facial level. So I would just encourage the court to make sure that we're thinking about the overall system and not just an individual case. In that regard, just to answer the question about sealing software, it does exist. It's not very good. So in the future, that may or may not be the case. I don't know. But there are things that you can do, but they exist. They're expensive, and they're not necessarily all that. So we shouldn't look for the technological fix immediately? I don't disagree. Or contemporaneously? Or within 24 hours? Let me ask, if I could, Mr. Nave, could I ask you to address the abstention issues? You and the Reporters Committee and Courthouse News Service are involved in these cases all over the country. Yes, Your Honor. And apart from the recent Courthouse News Service's decisions in the Ninth Circuit and a handful of district courts, are there other cases where federal courts are issuing orders to state courts about how to manage access to their documents? There are cases where the issue comes up. They are few and far between. They're cited in our briefs. Probably the most prominent is Sulo v. Bobbitt. It's an odd case because it looks like it's a published opinion, but it says it's unpublished out of the Fifth Circuit. That had to do with getting access to, I think, traffic tickets in that case, but the first things are filed. Same exact claim. I want them now because I've got to solicit clients. That's not the same as Courthouse News. In that case, the court held no experience, no case. Right. On the merits, in terms of the abstention issues, we have cases all over the country talking about First Amendment or common law rights of access to court records. Most of those seem to arise in the context of going to the court whose records are at issue. So I'm asking, before the Courthouse News cases arise, do we have federal courts issuing injunctions to state courts about how to manage their files? In the context of this case, Your Honor, I'll stump the lawyer a little bit. I don't think so. There aren't that many. The ones that I've given you are the ones where the issue of a First Amendment challenge comes up and the First Amendment challenge is rejected. IDT versus eBay is the second one that falls into that category. Again, we've cited those in our brief. There are common law access cases, and there's another Fourth Circuit case having to do with key tam seal complaints, which we've also cited in our brief. Again, that was denied. So I think those are the Circuit cases that are there. Your Honor, don't hold me. There may be some District Court cases out there. There certainly are District Court cases that Courthouse News has filed. But it's sort of incestuous, in a way, in reciting each other's cases. So I'm not sure how persuasive it is. Well, that's what I'm talking about. Before this very recent spate of cases, it's an unusual role for federal courts to find themselves in. It is. And especially when the first case was Jackson. And what's interesting, that's in Texas. The interesting thing about that case was that it was a stipulated injunction where the clerk in Texas agreed with Courthouse News. Courthouse News has taken that case and has parlayed it into all this litigation across the country. But if you go back and look at the roots of this, what we're really talking about is reliance, for the most part, on a scattered number of cases and a number of circuits, including this one, that deal with sealing one case, as opposed to, I want access to everything and I want it now and we don't really get to pay attention to the other constituents that a court has to attend to. That's our primary concern. And frankly, that's why we're battling these cases. Could I? I'm going to run out. You should wrap up promptly. I'm going to run out of time if I don't get to a couple of other points. You are out of time. But just, if you could make those points very promptly. Very promptly. Second point, I recommend to the Court, Judge Guilford's summary judgment opinion in Courthouse News v. Yamasaki is probably the most definitive case on the topic right now. Any case that starts off with extra, extra read-all about it deserves some attention. So, it's a thoughtful opinion. Thank you very much. Thank you, Your Honor. We'll now hear from the appellees, Courthouse News Service. Mr. Scher? Good morning. Brian Scher on behalf of Courthouse News. Long as the Seventh Circuit is clear, there is a First Amendment right to contemporaneous access to newly filed complaints. Brown's process-first policy violates this right. Yet Brown's process-first policy   and serves as a pretext for the Court's decision to revoke this right. It serves no compelling government interest. Mr. Scher, what does the District Court's injunction require in your view with respect to speed? I'm just going back to that colloquy we had a couple of minutes ago. Yes. All Judge Kennelly's order requires is that access be provided contemporaneous with filing and not after processing. So simply provide access prior to processing. So in the hypothetical of a complaint filed this evening, after business hours, would access have to be provided before the clerk's office reopened on Monday morning and was able to do the processing? Your Honor, no. Our issue here is with the delay caused by the processing. And all we're looking for is what the Illinois Supreme Court requires a clerk to do, which is to provide public access within the clerk's office during the business hours if the clerk is open. So as we have it right now, if a complaint were to be filed this evening, our expectation would be that that complaint would be accessible at the clerk's office 8-3 in the morning on Monday. Nothing more. We're not looking for 24-7. If I can to address an issue you raised earlier about resources, we're not asking the court to spend any additional dollars. All we're asking is that the e-file complaint be shuttled off to the computer terminal in the clerk's office upon e-filing, upon receipt. Not after processing. There's no additional. So the Chief Judge's order certainly seems to contemplate and accept-reject function, right? It does. So the notion of rejecting a document, is it your contention you have a First Amendment right of access to documents that are rejected? Your Honor, there are only four instances when the clerk may reject a filing. There are technical instances regarding legibility, payment of the fee, data size, multiple copies being filed, etc. None of them relate to the confidentiality, personal information issue. So it would be our contention that there is no compelling government interest in delaying press access while, if a complaint might be rejected due to legibility. Let's suppose a complaint is filed by a pro se litigant who names a number of judges, prosecutors and confidential informants as defendants and includes home addresses, social security numbers and birthdates. You've got a First Amendment access right to that instantly? Your Honor, we would contend that given the way the rules are structured that yes, we would. Okay, well let's take two Could those rules be modified consistent with the First Amendment? Your Honor, there is no doubt that the rules could be modified and narrowly tailored to address exactly the issue you're dealing with. For example, if the concern is pro se litigants, there could be Lawyers make mistakes too, right? Your Honor, there is an obligation We have no evidence in the record of any mistakes that have been made whatsoever in being caught by the clerk. Not a one. So this is all speculative which is clearly prohibited under the law. But what you're now describing, if you're talking about a pro se litigant could there be a narrow tailoring to avoid that issue? Of course there could. Wouldn't that have to involve some delay? Yes, it would. If there was narrow tailoring Now we're moving into compelling government interests a narrowly tailored restriction Yes, there could be a scenario where that would be appropriate. That's not in front of the court. It is, though, in front of the court. It's these kind of hypotheticals that concern me because by the terms of the work and even accepting your construction of it, right? The office has to be open and you get access via the computer terminal If the clerk's office is not allowed to do this type of processing isn't that hypothetical right in play? And it seems extraordinary that this remedy would issue in the form of a preliminary injunction like this to me. Your Honor from our perspective Mr. Naver, I think rightly points out you're talking about systemic access to all civil complaints that are subject to the e-filing requirements of a state court system It's a pretty broad remedy Understandably And a mandatory injunction at that I disagree with whether it's a mandatory injunction I think it's just It's not prohibitive, is it? It's requiring them to do something It's requiring them to give you access It's returning to the status quo of simply providing access upon receipt which was what was going on with paper filing historically for years This is The paper filing world is one you could live with I'm sorry? The paper filing world is one you could live with in Cook County You guys had worked it out Your Honor The paper filing in Cook County was nothing more than the same as a receipt in e-filing All that happened is and there's no evidence in the record other than what we have proper which is Mr. Gerdner's and Mr. Angione's declarations which indicate that when a paper filing was received by the clerk all that was done there was the check was taken there was no processing that was done whatsoever it was stamped and a copy was placed in a wire basket there was no review for confidential information there was no for the processing there was no docketing nothing was done whatsoever So for decades that was the approach and now we've got this concern somehow that with e-filing we're going to slow things down and we're going to make it more challenging for the press to gain access rather than making it easier for the press to gain access We're simply saying that we should be provided the same access at the clerk's office as we were with paper filing There was no review being done by the clerk's office There's no counter affidavits being provided that the clerk the intake clerk at the clerk's office was doing anything of the sort at all and in fact we know that's not what was going on There was no review, there was nothing being checked to see whether or not social security numbers might be inadvertently disclosed in a pleading that wasn't being done and so we continue to contend that under Grove Fresh that once the right of access has been determined under the First Amendment which it has, it needs to be contemporaneous and immediate So let's talk about that language in Grove Fresh for a moment because I want to ask you about abstention in a few minutes but on Grove Fresh since you brought it up I guess my question is what's the unit of measure as you see it? Are we measuring unconstitutional delays in seconds, minutes, hours days, what is it? Your Honor, we contend that delays caused by processing where there is no governmental interest whatsoever So you don't want to answer in terms of Your Honor, I don't believe that there is a measure to say five minutes, ten minutes What we have here is a record replete with systemic delays 40% of the filings were not available even on the same day Our concern as a news gathering entity is same day access That's our concern But let's look at, you're relying so heavily on the language in Grove Fresh Maybe I've missed this but it looked to me like Grove Fresh was talking about cases involving either complete or long-term denial of access as in months and years What Grove Fresh itself ordered, I thought was a process in the trial court in which parties claiming that private information was available in the court's files should continue to be protected. There would be a back and forth process of litigation of that issue and the court would decide And Grove Fresh itself came down four months after the oral argument case. The notion of contemporaneous or instant seems to have a lot of play in it there. Understood And, you know we've cited a significant number of additional cases talking about delays of one day being too long, the Caskey decision The AP versus district court in the 9th circuit 48 hours is too long. We obviously have the Planet, Tingling and Jackson cases which were all from Courthouse News which talk about delays of a day generally being improper Where does that standard come from? That access delayed is access denied That's directly out of Grove Fresh or if I could be more colloquial you know, today's news is tomorrow's fish and chips wrapper If we're going to have If the media is going to have access it needs to be contemporaneous so that the news can be fresh But you're picking up language from cases in which contemporaneous could be measured in terms of weeks or months of delay as opposed to years or never Right? And that's Grove Fresh Correct. Understood But you know Can I identify what the word immediate in terms of the temporal definition? No we cannot. What we can say here is that the processing that's occurring here whereby 40% of the cases are delayed by more than by a day or more How many of those are we talking about more than one business day? We've got, I believe I think the number is about 15% are more than one business day The defendant is telling us it's about 9% Can you reconcile that? Your Honor They're defining, I apologize and I believe I misspoke then I'm not quibbling with their statistics They're counting business days as opposed to, from our perspective calendar days. The news doesn't stop until it becomes important But you've agreed, I thought that it's okay for the courts to close on the weekends Correct. So Your Honor, as a practical matter we have reporters that are in the clerk's office Monday through Friday. They're allowed to stay beyond the 430 as long as they're there beforehand, that's in the record extensively So they stay. So the only real concern is now is we could have weekend filings that occur that result or late night Friday filings that occur that we're not going to have access until Monday And given the fact that That's okay, right? We're fine with that, Your Honor. We're not challenging that And in fact That's consistent with the Illinois rules on this issue, which indicate that a complaint filed on a Saturday or Sunday is not being filed until Monday. We're fine with that We're not challenging that All we challenge, which is what Judge Connelly ordered, is that the processing should not occur before access is provided. That seems odd to me that the process So the United States Supreme Court If you take a look at the clerk's office procedures By their terms they say a petition for certiorari which I think we can all agree could in many instances be a matter of significant public interest It's not immediately available Only available once the clerk's office has reviewed the paper document and accepted it for filing Is that a First Amendment problem? I don't know, Your Honor I'm unaware There's obviously nothing in the record on the time delays on the purpose of the processing We've got an extensive record here It's probably just to make sure that there's a jurisdictional statement It has a front cover It's identifying the decision that sought to be reviewed We do much the same thing across the hall Similar to what goes on here I've not looked at the Supreme Court to determine what delays there are There are minimal delays here I think it's at the heart of Judge Hamilton's questions There's no The First Amendment does not permit another court to process filings Your Honor If that's true in Cook County, I don't know why it's not true in the United States Supreme Court The challenge here may be the record below there is nothing that's been proffered by the clerk regarding any that they're now hanging their hat on have been resolved Any instances where there's any additional resources They've got nothing below to show that there's any interest that is being, any governmental interest whatsoever that's being met as a result of this processing Not having the record before us with respect to what governmental interests the Seventh Circuit clerks may have or the United States Supreme Court clerk may have We know here, they've done nothing whatsoever We're unclear whether they're even reviewing There's nothing in the record to indicate that they're reviewing for these confidentiality issues As this court is well aware from our papers The General Order does not direct them to do this at all Did you guys try to sit down and work this out? For months and months and months There's correspondence throughout the record going back and forth We didn't hear about this confidentiality issue until after we filed the PI papers The confidentiality issue was a brand new issue that they threw out there previously They were worried about confusion in the public if somehow a complaint would be published With the clerk's office or with Chief Judge Evans? I'm sorry, it was with the clerk's office So, could I ask you You've run out of time but I think we do need to have you address the abstention questions Yes, Your Honor In particular, could you address the SKS associates rationale? Of course In SKS, Your Honor, there are two key issues that distinguish SKS from the matter at hand The first being that there was specifically a General Order that was being challenged We are not challenging the General Order The clerk is attempting to use the General Order as a false shield here There is no inconsistency between compliance with the General Order and compliance with Judge Canelli's order whatsoever Second, SKS involved ongoing state eviction proceedings in which SKS was a party That's classic younger opportunity And even there, the Seventh Circuit questioned whether or not younger abstention was appropriate Well, it's not younger, it wasn't younger The plaintiff in SKS wasn't asking us, the federal courts to stop proceedings He was asking them to speed them up Understood My point there is with SKS Even in SKS, they acknowledge that it wasn't a clean fit because it was asking to speed up the state court proceedings and because of the side of the case that SKS was on However, there were ongoing state court proceedings in which SKS had opportunity to raise these issues That is not what is at issue here Thank you Thank you Then the amici on the police side Ms. Voges Good morning, your honors and may it please the court Caitlin Voges for amici curia the reporters committee for freedom of the press and 40 news media organizations Amici are here today because as news organizations they rely on the contemporaneous right of access to civil complaints every day to report the news to the public  or the news publications that they publish including the Associated Press the Associated Press the Wall Street Journal and the Detroit Free Press are Courthouse News Service subscribers meaning that Courthouse News Service is a direct source of information for those news publications Others of the amici, such as the New York Times have cited Courthouse News Service as a source of information for their stories and still other of the amici and many other news organizations send their reporters to courthouses around the country to access newly filed civil complaints when they are filed so that these organizations can report the news to the public when it is fresh so as a result the court's decision today will have a direct impact on the press' ability to obtain contemporaneous access to civil complaints and therefore on the public's ability to know about what's happening in our judicial system On the point of contemporaneous standard, what's the first amendment requiring in your judgment? Your honor, as this court has made clear in several cases, including Grove Fresh and the matter of Continental Illinois securities litigation when the first amendment right of access attaches access must be immediate and contemporaneous What's that mean though, here? So the 7th Circuit has not defined specifically what immediate and contemporaneous means, but I think one thing that's helpful to look at is in the Grove Fresh decision, the reason that the court said that access must be immediate and contemporaneous and the court there said that immediate and contemporaneous access is a necessary corollary to the purposes that the first amendment right is supposed to serve and it noted that when it comes to the news value of a particular story, that news value is fleeting, that's the word the court used and so I think it means something pretty quick Is one business day enough? Your honor, I think potentially yes one business day can have a significant impact, a delay of a business day can have a significant impact on the news media's ability to report the news to the public and the reason for that is something else that this court has recognized in the Chicago Council of Lawyers case where it recognized that the public's attention is commanded at the moment that information is new and the moment that information is fresh and that's why news publications like the New York Times, the Chicago Tribune have a time stamp on their front page for many of their articles on their website that lets the public know the minute that those stories were reported because the public is interested in knowing new information, it's not interested in old information. So when access to civil complaints is denied even for a single business day that can have a real impact, it can mean that the story is not reported at all it can mean that the story is maybe reported but you know in a much less prominent position, not on the front page, way deep in the newspaper I think your honor, another point to make there is that the First Amendment right of contemporaneous access serves the need for accurate and complete news reporting as well so when the news media has access to complaints shortly after they're filed, it means that they can rely on the authoritative document that initiates the case, that they can quote directly from that document that in many cases they can provide a copy of that document for the public for them to see as well so all of those things are kind of fostered by this contemporaneous access and that's why it's so important and even what we may think of as short delays can have a real impact and they're a disservice to the right of access. Does your client have thoughts on the federalism aspects of this case? Are you referring to abstention your honor? Abstention and the fact that you're arguing to a court that seems to be in violation of the First Amendment under your theory Your honor so two points, I would not say that the Seventh Circuit is in violation of the First Amendment under Amici's theory first of all, I think that was the premise of your question. Well we don't we don't make documents that are e-filed available immediately Your honor, I believe that there's a processing delay. Yes, I understand that that has been cited by the parties in their papers. I don't believe there's anything in the record actually about the amount of delay that's caused by processing at the Seventh Circuit. I know in my experience, Amici's experience access at the Seventh Circuit is pretty contemporaneous. We're able to obtain access to documents that are filed in the Seventh Circuit very quickly after they're filed and that's consistent with federal courts around the country who use e-filing where litigants file through ECF and then the documents are made in many courts instantaneously available on PACER in some courts after a very brief delay but that access is still contemporaneous nevertheless Your honor, just very quickly with respect to abstention, you had asked counsel, for the judicial counsel, about other cases regarding abstention I would point the court's attention to the Pellegrino case from the Second Circuit that was a case, like this case, involving systemic denials of access there was access to court dockets and there the Second Circuit held that abstention under Younger is not appropriate and we think it's not appropriate here either If the court has no further questions, we ask that you affirm. Thank you Thank you, counsel. Mr. Castiglione, any rebuttal? Just a few brief points. I think based on what counsel for CNS said, I think they are asking for contemporaneous filing in the sense that if a document's filed on 10 o'clock on a Saturday night, they want to be able to see it 8.30 Monday morning prior to review. That's effectively contemporaneous and immediate access, which is in fact what Judge Canelli talked about in his order Second, there's been a lot of discussion about the state of the record. I just want to point out, this is a facial challenge and the position of CNS's was that the practice of the Circuit Clerk was facially invalid. Now, I think the actions of the Clerk are intertwined with both Judge Evans' order to 2014-2 and the Supreme Court rule, but in any event, it's a facial challenge and on its face the ability to be able to review documents does not violate the First Amendment When there's a facial challenge to government practices that may be subject to more than just rational basis review, evidence can help. Evidence can help it's true, but those issues were not really brought to bear in the District Court by CNS In any event, I think it doesn't I still think it doesn't get away from the SKS problem here and the O'Shea problem, that this really what plaintiffs needed to do if they really wanted to set aside this practice would be to challenge it in the State Court and to go to Judge Scudder's question about talks between the parties The Circuit Clerk and CNS definitely did talk and tried to work it out, and it didn't take place. But CNS I can represent to the Court never did deal with Judge Evans' office or the Illinois Supreme Court and, in fact, after the preliminary injunction was issued, and this is in our briefs and it's in the record the Circuit Clerk wrote a letter to the Supreme Court asking for relief and was denied that. So it goes to your question, could Judge Evans' general order and Judge Cannelli's order be reconciled? We say no. There was a dilemma for the Clerk To follow Judge Cannelli would mean not following Judge Evans Really, if you think about it, in terms of that's not sole purpose of Younger but that's a purpose of Younger, of the federalism concerns, is to not put a local official in that kind of dilemma And finally, we agree, Your Honor that the procedures in the Illinois Supreme Court do not violate the First Amendment. I think the idea that the Clerks in those courts, in this Court and in Washington, can review filings to make sure they're filed properly is perfectly consistent with the First Amendment So is the Circuit Clerk following Judge Evans' order and the Illinois Supreme Court rules So for those reasons, again, we would ask that the preliminary injunction be reversed and that the case be remanded with directions to dismiss for lack of subject matter jurisdiction Thank you, counsel The case is taken under advisement Thanks to all counsel